No. 48,962

STATE OF KANSAS, *Appellee,* v. HIRAM SANDERS, *Appellant.*

(575 P.2d 533)

Opinion filed February 25, 1978.

*Michael J. Peterson,* of Kansas City, was on the brief for the appellant.

*Curt T. Schneider,* attorney general, *Nick A. Tomasic,* district attorney, and *Thomas L. Boeding,* assistant district attorney, were on the brief for the appellee.

*Per Curiam:* This is a direct appeal by Hiram Sanders from his convictions of aggravated battery of Harry Crossland, a civilian employee of the Kansas City, Kansas, police department, in violation of K.S.A. 21-3414, aggravated battery of a law enforcement officer, Sergeant Anthony Kovac, in violation of K.S.A. 21-3415, and three counts of battery against law enforcement officers, Officers Ronald Hogue, Melvin Cheek and Steve Barber, in violation of K.S.A. 21-3413. A number of points are raised; we will discuss each after stating the facts.

On August 15, 1976, Officers Hogue and Cheek were on duty in Kansas City, Kansas. They responded to a call by going to the 2500 block on Hiawatha, where they found the defendant slumped over on the front seat of a car, which had come to rest on a private lawn. Defendant's eyes were rolling around, and he appeared to be semi-conscious. The officers discerned no strong odor of alcohol, and concluded that Sanders was high on drugs. They helped him walk to the police car and put him in the back seat, and planned to take him to headquarters for observation for four hours, under police department policy. Sanders was not placed under arrest, and he was not searched or handcuffed. Shortly after he was placed in the patrol car, Sanders began kicking, beating on the windows and the shield separating him from the front seat, shouting, cursing, and threatening the officers.

Sanders refused to come out of the patrol car when it arrived at headquarters. Officer Barber joined the other two officers, and Barber and Cheek reached into the back seat and attempted to pull Sanders out. Suddenly, when Sanders got his feet on the ground, he jumped out and landed on Officer Cheek. He pro-

ceeded to strike and kick the three officers repeatedly; he was finally subdued and was carried into the booking area, where he lay on the floor and pretended to be unconscious. Sergeant Kovac and Mr. Crossland were on duty; they started to search Sanders, and the other officers started to leave. The telephone rang, and Sergeant Kovac turned to answer it. Suddenly, Sanders kicked Crossland in the chest, then jumped high in the air and came down with his elbow at the back of Kovac's neck, knocking him unconscious. He began jumping on Kovac and kicking him in the back. Crossland attempted to restrain Sanders, and Officers Hogue, Cheek and Barber, hearing the commotion, returned and subdued him. The officers testified in substance that Sanders had done a lot of boxing; that on the date in question he called the officers by name, he knew where he was and what he was doing, and he handled himself well; his blows and kicks were not wild, but were aimed and effective.

Harry Crossland, a civilian employee of the police department, sustained an injured hand in the melee; he also suffered a heart attack, with some permanent heart damage. His physician testified that the incident was a precipitating factor in causing the heart attack. Crossland was in intensive care for a week, remained in the hospital for another week, and his physician would not let him return to work at the time of trial.

Sergeant Kovac suffered a neck and shoulder injury from the blow to the back of his neck. He received therapy every day for seven weeks. This included neck traction, back traction, hot packs, diathermy treatments, and exercises. Kovac missed seven weeks of work, and he was still experiencing pain from the injury at the time of trial, more than five months after the occurrence.

Officer Barber received various cuts and bruises, and one of his hands was placed in a cast because of torn cartilage, ligament and tendon. It was six weeks before he could return to work.

Officers Hogue and Cheek sustained minor sprains; neither was hospitalized, and neither missed work because of injury.

Sanders contends that the evidence failed to prove that the aggravated battery victims, Crossland and Kovac, suffered great bodily harm as a result of the incident. This issue was not raised during trial, nor was it included in the motion for a new trial. An issue presented for the first time on appeal will not be considered by this court. *State v. Hornbeak,* 221 Kan. 397, 404, 559 P.2d 385.

Even if this issue had been presented to the trial court, the issue for review on appeal is whether the evidence is sufficient to form a reasonable inference of guilt when viewed in the light most favorable to the state. *State v. Hornbeak,* supra. Viewed in that light, the evidence was ample.

Next, defendant contends that K.S.A. 21-3414 is unconstitutionally vague and indefinite in that persons of common intelligence cannot determine what is meant by the statutory wording, "great bodily harm." Again, we note that this point was not presented to the trial court during the trial or upon the motion for new trial. An issue presented here for the first time on appeal cannot be considered. *State v. Hornbeak,* supra. However, were the point properly before us, it would not benefit the defendant. He relies upon *State v. Conley,* 216 Kan. 66, 531 P.2d 36. We believe his reliance is misplaced; the language of the statute here before us is couched in language which is readily understandable, and there are no omissions of necessary language. *Bodily harm*—harm or injury to the body—is clear and unequivocal. *Great* distinguishes the bodily harm necessary in this offense from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery. Whether the injury or harm is "great" or not is generally a question of fact for the jury. See *Froedge v. State,* 249 Ind. 438, 445, 233 N.E.2d 631 (1938); *Houston v. State,* _____ Ind. App. _____, 342 N.E.2d 684 (1976); and *People v. Smith,* 6 Ill. App. 3d 259, 285 N.E.2d 460 (1972).

Sanders contends that his initial custody was illegal because the officers did not comply with K.S.A. 65-4027 (now K.S.A. 1977 Supp. 65-4027). The statute is part of the Alcoholism article of Chapter 65, and by its terms is applicable only to persons "intoxicated or incapacitated by alcohol." The witnesses, including the defendant, attributed defendant's condition to drugs other than alcohol. Under the facts, the statute was inapplicable.

Defendant claims that the evidence showed that he was incapable of forming the specific intent to injure another person, required by K.S.A. 21-3414; that the jury disregarded this evidence; and that the verdict was not supported by the evidence. True, there was evidence that the defendant was "high" as a result of his voluntary consumption of drugs; but there was also evidence that the defendant was at times alert and that he rec-

ognized officers and called them by name. His physical dexterity was amply demonstrated. The trial court properly instructed the jury on voluntary intoxication. Considering all of the evidence favorable to the state, as we are obliged to do, we conclude that the evidence was sufficient to form the basis for a reasonable inference of guilt. *State v. Hornbeak*, supra.

Finally, Sanders contends that he was not afforded a trial by a jury of his peers, and that the trial court erred in not sustaining defendant's motion to discharge the jury panel at the beginning of the trial, for the reason that the prosecutor struck all jurors who were members of the Negro race. We addressed this same proposition in *State v. King*, 219 Kan. 508, 548 P.2d 803, and *State v. Jordan*, 220 Kan. 110, 551 P.2d 773. In the latter case, we said:

"The fact that the state by exercise of peremptory challenges has excluded all members of a race or class from the jury does not alone deprive the accused of his right to a fair trial." (p. 115.)

The record indicates that at least one of the jurors removed by the state had some personal acquaintanceship with Sanders and his family. As the United States Supreme Court said in *Swain v. Alabama*, 380 U.S. 202, 222, 13 L.Ed.2d 759, 773, 85 S.Ct. 824, "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." We find no showing to the contrary in the case before us.

The judgment is affirmed.