No. 55,443

State of Kansas, *Appellee*, v. Anastacio Burtos Gomez, *Appellant*.

(673 P.2d 1160)

Opinion filed December 2, 1983.

*Kenton D. Wirth*, of Wichita, argued the cause and was on the brief for appellant.

*Dell Marie Shanahan*, legal intern, argued the cause, and *Geary N. Gorup*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

Miller, J.: Anastacio Burtos Gomez appeals from his conviction by a jury in Sedgwick County District Court of aggravated robbery, K.S.A. 21-3427. He contends that the trial court erred in ruling that the bill taken from the victim's wallet was "property" as a matter of law, in refusing to instruct the jury on the statutory definition of property, in refusing to instruct on the lesser included offense of robbery, and in admitting evidence of the actions of his confederate. Finally, he claims that the statutory definitions of robbery and aggravated robbery are unconstitutionally vague and violate due process because the term "bodily harm" is undefined.

On the night of June 15, 1982, James Phillips was asleep in a car outside of the Eaton Tap Room in Wichita, Kansas. He was

rudely awakened when the car doors were suddenly opened. He faced two men armed with knives, defendant Gomez entering on the driver's side and Carlos Morales on the passenger side. They sprayed mace into the car, took a bill from the victim's wallet and an opened package of Marlboro cigarettes from the dashboard, and left on foot. Phillips dashed into the tavern and sounded the alarm. Both robbers were quickly captured. Gomez had the bill taken from the victim's wallet, and Morales had what appeared to be the victim's cigarettes. Later, Gomez' thumbprint was found on the door handle of the car in which Phillips had been sleeping.

The bill taken from the victim's wallet was easily identified. It was not U.S. currency, but "funny money"—a $180 bill. Its four quadrants showed denominations of $100, $50, $20 and $10.

Over defendant's objection, the trial judge ruled that the $180 bill was "property" as a matter of law. The judge refused to give the jury the statutory definition of property contained in K.S.A. 21-3110(16), and he refused to give the jury an instruction proposed by the defendant, requiring the jury to find that items taken in a robbery must have intrinsic value in order to constitute "property."

The statutes involved read as follows:

"21-3426. **Robbery.** Robbery is the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force."

"21-3427. **Aggravated robbery.** Aggravated robbery is a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery."

"21-3110. **General definitions.** The following definitions shall apply when the words and phrases defined are used in this code, except when a particular context clearly requires a different meaning.

. . . . .

"(16) 'Property' means anything of value, tangible or intangible, real or personal."

The robbery statutes set forth above were enacted by the 1969 Legislature, and were classified under the heading "Crimes Against Persons." L. 1969, ch. 180.

Theft, as defined by K.S.A. 21-3701, is a crime against property. In theft, unlike robbery, the value of the property determines the seriousness of the offense. Theft of property of the value of $100 or more is a felony, while theft of property of the value of less than $100 is a misdemeanor.

The value of property taken during a robbery, however, is not determinative of the seriousness of the offense. Robbery is primarily an offense against a person, and the gist of the offense is the taking from the person or presence of the victim *by threat of bodily harm or by force.* Justice Dawson, in *State v. Tucker,* 115 Kan. 203, 222 Pac. 96 (1924), observed that:

"It was immaterial to the charge of first degree robbery whether the victim was robbed of ten cents or ten thousand dollars' worth of gold, silver, and diamonds." 115 Kan. at 204.

This appears to be the general rule. In 77 C.J.S., Robbery § 6, the rule is stated as follows:

"As long as the property taken has *some value,* the amount of its value is immaterial both at common law and under statutes containing no requirement with respect to the amount of value. Accordingly, the crime of robbery may be committed even though the property taken is of *slight value.* Further, *an actual pecuniary value is not essential as long as it appears that the property had some value to the person robbed."* (Emphasis supplied.)

In 67 Am. Jur. 2d, Robbery § 13, p. 38, it is said:

"Although the property ordinarily must have some worth, proof of a specific pecuniary value is not required. The fact that the property was kept and preserved as of value to the owner and was neither worthless nor unfit for use, although its pecuniary value was nominal, insignificant, or incapable of estimation, is sufficient. And the property need not be taken for its pecuniary value; thus, taking cell keys from a jailer at gunpoint has been held to be robbery . . . ."

We note also that contraband property has generally been held to be the subject of robbery. See 67 Am. Jur. 2d, Robbery § 13, and 77 C.J.S., Robbery § 8.

In Miller, Handbook of Criminal Law § 124, pp. 391-92 (1934), the author states:

"As in the case of larceny, property, to be the subject of robbery, must be personal property. . . . The amount of the value of the property taken is immaterial."

Further, in § 110, pp. 343-44, Dean Miller says:

"It is frequently said that the property must also be of some value, though it may be the very smallest, less than that of any known coin. Since all property is of some value even if infinitesimal, the rule as stated seems to be a matter of words, merely. A bill, note, or other like instrument is not, at common law, the subject of larceny, because it was regarded, not as property, but as mere evidence of property or of some right thereto. If it were a valid instrument, the paper on which it was written was considered to be absorbed into the chose in action and

to lose its existence as a piece of paper. If, however, the instrument were invalid, and of no value as such, it retained its existence as a piece of paper, and was the subject of larceny."

In *Richardson v. State,* 168 Miss. 788, 792, 151 So. 910 (1934), the court sets forth the rule as follows:

"In a prosecution for robbery, the property taken need not have any actual pecuniary value if it appears that it had some value to the person robbed. 54 C.J. 1012. The value of the property taken need be only the minutest, Bishop on Criminal Law (9 Ed.), vol. 2, sec. 1162, and, as said in the case of Jackson & Dean v. State, 69 Ala. 249, if there is evidence showing that the property taken was 'not worthless—that it was not wholly unfit for use, or that the owner kept and preserved it as of value to him, it was the subject of robbery, though the pecuniary value which could be imputed to it was nominal, insignificant, or incapable of estimation.' "

The statement of the Alabama Court of Criminal Appeals in *White v. State,* 378 So. 2d 239, 244 (Ala. Crim. App. 1979), *cert. denied* 378 So. 2d 247 (Ala. 1979), appears particularly appropriate:

"That some economists, in these days of inflation in unprecedented distention, are suggesting that pennies have no value, in the eyes of the law they still do and, regardless of their number, what was said in *James v. State,* 53 Ala. 380, 387 (1875), in quoting from Roscoe, *Evidence in Criminal Cases,* 1908, still applies: " ' ". . . [T]he value of the property is immaterial. A penny, as well as a pound, forcibly extorted constitutes a robbery, the gist of the offense being the force and terror." ' "

In *The People v. Cassidy,* 394 Ill. 245, 246, 68 N.E.2d 302, *cert. denied* 329 U.S. 769 (1946), the Supreme Court of Illinois said:

"[T]he value of the property taken from another by force or intimidation is immaterial, since the gist of the crime [of robbery] lies in the force or intimidation."

Defendant contends that the trial court erred in ruling that the $180 bill was "property" as a matter of law. The only evidence tending to establish the value of the $180 bill was the victim's testimony that the bill was a gift; that it had personal value to him, but no intrinsic value; and that he had never seen another like it.

The bill is a novelty item, and while it does not have the value of a $100 bill, or any other item of United States currency, it is clear that the item has some small token value. According to the California case of *People v. Simmons,* 28 Cal. 2d 699, 172 P.2d 18 (1946), judicial notice may be taken of the fact that an item of

personal property has some value. In *State v. Phillips,* 106 Kan. 192, Syl. ¶ 2, 186 Pac. 743 (1920), this court took judicial notice that a slightly used five-passenger touring car was worth more than $20 and thus could form the basis for a grand larceny conviction. In view of the rule that property taken in a robbery need only have minimal or nominal value, we conclude that the trial court did not err in taking judicial notice of the bill's slight value nor in holding as a matter of law that the $180 bill was property.

In addition, the undisputed evidence shows that a package of cigarettes was taken during the robbery. There was only one robbery, committed by two men; two items were taken; both items were taken at knife-point. The actions of one robber can be used to prove the elements of the crime against the other. See *State v. Johnson & Underwood,* 230 Kan. 309, 311, 634 P.2d 1095 (1981). The package of cigarettes, taken during the robbery, is in itself sufficient property to support the robbery conviction. *People v. Simmons,* 28 Cal. 2d 699.

Defendant submitted the following proposed jury instruction:

"In order to find the defendant guilty of either aggravated robbery or robbery, you must find the property taken by the defendant has intrinsic value."

Many items of personal property may have little intrinsic value, yet they are sufficient to support a robbery conviction. There is no requirement in our statute that the property taken have intrinsic value. Nominal value is sufficient. We find no error.

The Court of Appeals in *State v. Robinson,* 4 Kan. App. 2d 428, 431, 608 P.2d 1014 (1980), a theft case, uses the following language:

"We hold the rule as to value to be used in determining whether a theft is a felony or a misdemeanor is that same is the fair market value, except where an item or items constituting the res of the theft has no fair market value, or where the value is peculiar to the owner from whom the property was stolen, then its 'money' value to the owner is a proper test. We stress 'money' value in order to make it clear that mere sentimental considerations cannot be attributed value when that term is used in the field of criminal law."

The latter statement, when applied in the context of a robbery case, is too broad. If the item of personal property taken has value to the owner, if he has kept and preserved it as of value to him, then even though the item has but trifling value to the rest

of the world, it may well constitute property and thus support a robbery charge. The principal feature of robbery, we emphasize, is not the value of the property taken, but the force or threat of bodily harm by which the taking is accomplished.

During the conference on jury instructions, the trial judge ruled as a matter of law that the false bill was property under the evidence in the case. He went on to rule that counsel would not be permitted to argue that the bill was not property because it had no intrinsic value. As we have already held, where an item taken in a robbery has any value, however minuscule, to the owner or anyone else, the item constitutes property. Allowing argument to the jury that the item was not property because it had no intrinsic value would have been error. The trial court quite properly foreclosed that argument.

Next, defendant contends that the trial court erred in refusing to instruct on the lesser included offense of simple robbery. In support of this claim, defendant points to the fact that he had no knife when he was captured. The evidence, however, was undisputed that both defendant and his confederate were armed with knives and used them at the time of the robbery, and that both were carrying knives as they fled from the scene. Though defendant was unarmed at the time he was captured, and though his knife was not recovered and offered into evidence, there was no evidence that the robbery was committed without the use of knives. It has long been our rule that a trial court need instruct upon a lesser included offense only where there is evidence upon which a defendant might have reasonably been convicted of the lesser charge. See *State v. Chears,* 231 Kan. 161, 165, 643 P.2d 154 (1982). Because there was no evidence in this case to support the lesser charge, the trial court did not err in refusing to instruct upon it.

Defendant next contends that the trial court erred in admitting testimony concerning the action of Morales and of the knife used by Morales, and in admitting into evidence the pack of Marlboro cigarettes found in Morales' possession at the time he was captured. Both Gomez and Morales acted together; each threatened the victim with a knife; each took property from him at the same time; and each possessed one item of the stolen property at the time of capture. The evidence was clearly relevant and admissible.

We now turn to the defendant's final contention that the robbery statutes are unconstitutionally vague and violate due process because the term "bodily harm" is undefined. The rules applicable to the challenge of a statute on vagueness grounds are stated in *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 532, 646 P.2d 1091 (1982), as follows:

"Let us first consider the rules of construction on the constitutional challenge of a statute. We have stated on innumerable occasions the constitutionality of a statute is presumed; all doubts must be resolved in favor of its validity, and before a statute may be stricken it must clearly appear there is a constitutional violation. We have gone on to say, in determining constitutionality, it is the court's duty to uphold the statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, it should be done. Statutes are not stricken unless the infringement of the superior law is clear beyond a reasonable doubt. *Von Ruden v. Miller*, 231 Kan. 1, 642 P.2d 91 (1982); *In re Brooks*, 228 Kan. 541, 543, 618 P.2d 814 (1980); *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 (1980); *Colby Distributing Co. v. Lennen*, 227 Kan. 179, 186-87, 606 P.2d 102 (1980); *State v. Meinert*, 225 Kan. 816, 817, 594 P.2d 232 (1979).

"Against this background let us examine the rules regarding vagueness and overbreadth:

" 'The test to determine whether a criminal statute is constitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness.' *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977)."

We faced a similar challenge to the phrase "great bodily harm" as used in the aggravated battery statute, K.S.A. 21-3414, in *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 (1978). We said:

"[T]he language of the statute here before us is couched in language which is readily understandable, and there are no omissions of necessary language. *Bodily harm*—harm or injury to the body—is clear and unequivocal." (Emphasis in original.)

In *Sanders*, we decided the issue here raised, and we adhere to that decision and find that it is consistent with the rules set out in *Palmgren*.

The judgment is affirmed.