No. 102,981

STATE OF KANSAS, *Appellee*, v. CALVIN CHARLES, *Appellant*.

(318 P.3d 997)

Opinion filed February 28, 2014.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Amanda G. Voth*, assistant district attorney, *Keith R. Schroeder*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: A jury convicted Calvin Charles on eight of nine counts of aggravated burglary and eight of nine counts of misde-

meanor theft. At a sentencing hearing, the district court judge ordered Charles to pay restitution "as contained within the presentence report." The report indicated that restitution for one of the victims was "to be determined." A restitution order filed 3 weeks later set the amount for the victim at $1,192.69. The order also included restitution for the victim on the charges that led to acquittal.

On appeal to the Court of Appeals, among other challenges, Charles argued that the district judge lacked subject matter jurisdiction to impose restitution for these two victims and, in the alternative, that the judge abused his discretion by ordering restitution on charges that led to acquittals. The State conceded the restitution award tied to the acquittals must be vacated. We granted Charles' petition for review on the Court of Appeals' remaining rulings affirming Charles' convictions and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

During the summer of 2008, the Hutchinson Police Department received several reports by victims claiming that their purses, wallets, and other small items had been stolen from their homes at night while they were sleeping. Along with the reports, investigators had several photos, taken by ATM surveillance cameras, of a man attempting to withdraw money using the victims' bank and credit cards. Police began investigating Charles after an officer saw him riding a bicycle and thought Charles resembled the man in the surveillance photos. Personal property belonging to several of the victims was later discovered in a dumpster outside of Charles' residence and inside his apartment.

The State charged Charles with nine counts of aggravated burglary, severity level 5 person felonies, and nine counts of theft, class A nonperson misdemeanors. On each of the aggravated burglary charges, the complaint alleged that Charles "intentionally, and without authority enter[ed] into or remain[ed] within a residence." See K.S.A. 21-3716. The theft charges each alleged that Charles "unlawfully, and intentionally obtained[ed] or exert[ed] unauthorized control over property . . . with the intention to permanently deprive the owner . . . of the possession, use, or benefit of said

property, of a value of less than one thousand dollars ($1,000.00)."
See K.S.A. 21-3701(a)(1), (b).

The complaint identified the nine victims, each of whom testified at trial. The State charged Charles with one count of aggravated burglary and one count of misdemeanor theft for each.

Two of the victims testified that the value of their stolen items exceeded $1,000. One, the victim named in Counts I and X, testified that her stolen purse and its contents—which included $100 in cash, a billfold, cell phone, cell phone charger, prescription glasses, perfume, makeup, driver's license, keys, gift cards, Social Security and medical cards, and eight credit cards—had an approximate replacement value of $1,280. She testified that the actual value of the items may have been "a little less." The other victim, named in Counts IX and XVIII, testified that the approximate value of his wallet, his wife's purse, and the contents of each was approximately $1,482. He testified that the purse contained his wife's billfold, cell phone, coin purse, $250 to $300 in cash, $2 to $3 in coins, a $330 gift card to Dillons, another gift card with "about $36 left on it," credit cards, insurance cards, discount cards, coupons, keys, lipstick, and various other "things."

The district court judge instructed the jury that, in order to find Charles guilty on the aggravated burglary and theft charges, it had to find that he "knowingly entered or remained in" the residences without authority and "the value of the [stolen] property was less than $1000." The jury found Charles guilty on all counts, except for the aggravated burglary and theft charges tied to the residence that was the subject of Counts VII and XVI.

At Charles' sentencing hearing, the district judge stated that restitution "as contained within the presentence report will be ordered." The presentence investigation report assigned a restitution amount of $1,184.77 to the victim named in Counts I and X. It designated the amount for the victim named in Counts IX and XVIII as "to be determined." The restitution amounts for each of the other victims were specific and less than $1,000, the threshold between misdemeanor and felony theft. See K.S.A. 21-3701(b)(3) and (b)(5).

At the conclusion of the sentencing hearing, the district judge directed Charles' counsel to file a notice of appeal. The notice of appeal was filed later that day.

The judge's restitution order, filed August 27, 2009, ordered Charles to pay the amount set out for each victim other than the one named in Counts IX and XVIII in the presentence investigation report. For the victim named in Counts IX and XVIII, the judge ordered $1,192.69.

Charles raised four issues on appeal in the Court of Appeals. First, he argued that there was insufficient evidence to support alternative means of committing aggravated burglary, both "entering into" and "remaining within" each home. Charles conceded that the State proved he entered each home; he contended there was no evidence that he remained within each home. Second, Charles argued there was insufficient evidence to convict him on two of the misdemeanor theft charges because "the uncontroverted evidence showed [he] took property worth more than $1,000." Third, he argued that the district court lacked subject matter jurisdiction to impose an additional restitution amount for the victim named in Counts IX and XVIII after his sentencing hearing ended. Finally, Charles argued that the district judge erred when he relied on Charles' criminal history score to increase his sentence without first requiring the criminal history to be proved to the jury beyond a reasonable doubt.

The Court of Appeals panel affirmed in part and vacated the restitution order for the victim named in the charges that led to the acquittals. State v. Charles, No. 102,181, 2011 WL 1196912, at *1, *9-10 (Kan. App. 2011) (unpublished opinion).

The panel rejected Charles' first argument, relying on this court's decision in State v. Gutierrez, 285 Kan. 332, 337-38, 172 P.3d 18 (2007), and its view that sufficient evidence supported a finding that Charles remained within each home with the intent to commit a theft therein. Charles, 2011 WL 2011 WL 1196912, at *2-3.

On Charles' second argument, the panel first drew guidance from State v. Carpenter, 228 Kan. 115, 121-26, 612 P.2d 163 (1980), which held that a defendant could be convicted of second-

degree murder upon proof of facts that would support a conviction of first-degree murder. The panel concluded: "Although Charles was not charged with felony theft but rather charged with and found guilty of misdemeanor theft, the fact that evidence may show he was guilty of the greater offense was not so prejudicial that it warranted reversal [of two] of his conviction[s]." *Charles*, 2011 WL 1196912, at *6. The panel also noted that jurors are charged with determining the weight and credit to be given the testimony of each witness and may use common sense, knowledge, and experience in regard to any matter about which a witness has testified. Using these tools available to every juror, the panel reasoned, a rational factfinder could have found that the values of the stolen property on Counts X and XVIII were less than $1,000 per victim, despite the victims' contrary valuations. 2011 WL 1196912, at *6-7.

The panel rejected Charles' subject matter jurisdiction argument on restitution and instead followed *State v. Cooper*, 267 Kan. 15, Syl. ¶ 2, 977 P.2d 960 (1999) (district court retains jurisdiction to set restitution amount after sentencing). *Charles*, 2011 WL 1196912, at *8.

And, finally, the panel deemed Charles' criminal history argument without merit under *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). *Charles*, 2011 WL 1196912, at *10.

## DISCUSSION

### *Sufficiency of Evidence on Aggravated Burglary*

"Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012). In addition,

"[w]hen sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Qualls*, 297 Kan. 61, 66, 298 P.3d 311 (2013).

Under K.S.A. 22-3421, a criminal defendant has a statutory right to a unanimous jury verdict. See *State v. Rojas-Marceleno*, 295 Kan. 525, Syl. ¶ 13, 285 P.3d 361 (2012); *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010).

"In *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994), this court explained:

' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." '

" 'Because jury unanimity is not required as to the means by which an alternative means crime is committed, unanimity instructions are not required in alternative means cases.' *Rojas-Marceleno*, 295 Kan. at 544. Nevertheless, the State must meet a 'super-sufficiency of the evidence' requirement, *i.e.*, present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. *Rojas-Marceleno*, 295 Kan. at 544. If the State fails to present sufficient evidence to support each means, reversal is required. *Rojas-Marceleno*, 295 Kan. at 544." *State v. Newcomb*, 296 Kan. 1012, 1014, 298 P.3d 285 (2013).

"Ordinarily, the first step in analyzing an alternative means case is to determine whether the case truly presents an alternative means issue." *Rojas-Marceleno*, 295 Kan. at 544. K.S.A. 21-3716 defines aggravated burglary as "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein." In *State v. Cook*, 286 Kan. 1098, 1107, 191 P.3d 294 (2008), this court held: "Where the jury is instructed that the single offense of aggravated burglary may be committed by either the unauthorized 'entering into' or 'remaining within' a structure, an alternative means case has been presented." The State does not argue that this holding was in any way affected by our recent decision in *Brown*, 295 Kan. at 194 (clarifying test for identifying whether statute sets out alternative means). We therefore determine whether there was sufficient evidence at trial that Charles both entered into and remained within the homes of the victims. Charles concedes that the State proved he entered each home, but he argues that there was no evidence he remained within any of them.

In *Gutierrez*, 285 Kan. 332, Syl. ¶ 2, this court held that entering into and remaining within refer to legally distinct factual situations.

"The entering into element of a burglary or aggravated burglary is satisfied when the evidence shows that a defendant crossed the plane of a building's exterior wall. Remaining within refers to a defendant's presence in the building's interior after any entering into, authorized or unauthorized, has been accomplished." 285 Kan. at 337.

But we rejected an argument that entering into and remaining within are mutually exclusive, *i.e.*, "that both cannot be present in a single case, because remaining within requires initial entry to be authorized." 285 Kan. at 337. This court explained:

"The paradigmatic example of remaining within may occur when (a) a defendant's initial entry into a building was authorized; (b) authority is later withdrawn; and (c) defendant nevertheless stays inside the building. But such a fact pattern is not essential. *A defendant who is unauthorized to enter into a building may continue to be unauthorized while he or she remains within,* unless the person or entity empowered to grant permission has decided upon a change in defendant's status. It also is conceivable that a defendant who is unauthorized to enter into a building may be granted permission to remain within and then be subject to later revocation of that permission." (Emphasis added.) 285 Kan. at 337.

Charles argues, as did the defendant in *State v. Frierson*, 298 Kan. 1005, 319 P.3d 515 (2014), that this court decided *Gutierrez* incorrectly. According to Charles, under *Gutierrez*, "there can be no 'entering into' without a corresponding 'remaining within' " because "every time a potential burglar enters into a building—or crosses the plane of a building's exterior wall, as it is defined in *Gutierrez*—the burglar necessarily remains within, even if only for a nanosecond." The "entering into" language in K.S.A. 21-3716 is thus rendered meaningless. We rejected an identical argument in *Frierson* and reaffirmed *Gutierrez. Frierson*, 298 Kan. at 1012-14. We have no reason to depart from these decisions or repeat our discussion of the issue here.

Under *Gutierrez*, sufficient evidence—viewed in a light most favorable to the State—supported the remaining within means of aggravated burglary in this case. The victims testified that Charles did not have authority to take their items and that the items were not immediately accessible from the exterior of the home. A ra-

tional factfinder could have found that Charles remained within the victims' homes without authority and possessed the simultaneous intent to commit a theft in each.

*Sufficiency of Evidence on Misdemeanor Theft*

Charles was charged with nine misdemeanor counts of theft. The district court instructed the jury on each count of theft that it must find the value of the property was less than $1,000 in order to return a guilty verdict. Charles argues that two of his misdemeanor theft convictions must be reversed because the undisputed evidence proved the stolen property was worth more than $1,000. In essence, Charles argues he should have been charged with and convicted on two felonies instead of two misdemeanors in Counts X and XVIII.

K.S.A. 21-3701(a)(1) defines theft as "[o]btaining or exerting unauthorized control over property" done "with intent to deprive the owner permanently of the possession, use or benefit of the owner's property." The classification of the crime is determined by the value of the stolen property. K.S.A. 21-3701(b). "Theft of property of the value of less than $1,000 is a class A nonperson misdemeanor." K.S.A. 21-3701(b)(5). "Theft of property of the value of at least $1,000 but less than $25,000 is a severity level 9, nonperson felony." K.S.A. 21-3701(b)(3).

The Court of Appeals panel's analysis of this issue focused on the jury's ability to consider and weigh the content of each victim's testimony as well as his or her credibility. The panel also recognized that appellate courts presume that jurors follow their instructions. 2011 WL 1196912, at *6; see *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010). Charles' arguments, in the panel's view, required it to ignore this presumption. It concluded:

"Count X alleged Charles deprived [the victim] of property of a value of less than $1,000. At trial, [the victim] testified that the approximate value of her purse and its contents was about $1,280, which included the replacement value of things. She further testified that the actual value of things may have been a little less. Viewed in the light most favorable to the State and presuming the jury followed the jury instructions, a rational jury could have found that [the victim's] purse, $100 in cash, billfold with book of checks, cell phone, cell phone charger, prescription glasses, bottle of perfume, makeup, driver's license, house key, key fob,

keyless entry to car, three gift cards, Social Security card, father's Social Security card, medical cards, car insurance card, and eight credit cards were less than $1,000 in value. Thus, a rational factfinder could have found Charles guilty beyond a reasonable doubt of misdemeanor theft with regard to Count X.

"Count XVIII alleged Charles deprived [another victim] of property of a value of less than $1,000. [This victim] testified at trial that the property taken included his billfold, his wife's purse, his wife's billfold, coin purse, $330 gift card to Dillon's, another gift card worth about $36, multiple credit cards, AAA card, health insurance card, discount cards, coupons, cell phone, car keys, and smaller items such as lipstick. In addition, [this victim] testified that his wife's purse also contained about $250 to $300 in cash and probably $2 to $3 in coins. He further testified that the approximate value of the items that were taken was $1,482, not including the electronic car keys, which cost approximately $150 to replace. The jury—not the appellate court—determines the weight of the testimony and evaluates [this victim's] credibility as to the amount of property taken. The jury also had the right to use its common sense, knowledge, and experience in regard to the amount of property stolen. Viewed in the light most favorable to the State and presuming the jury followed the jury instructions, a rational factfinder could have found that the value of property taken from [this victim] was less than $1,000. As a result, Charles' argument fails." 2011 WL 1196912, at *6-7.

Implicit in this analysis is the panel's conclusion that the jury may not have found the testimony of the two victims who testified on values more than $1,000 entirely credible. Although that conclusion may be sound, it was not, strictly speaking, legally necessary.

All personal property has some value, even if just "some small token value." *State v. Gomez*, 234 Kan. 447, 450-51, 673 P.2d 1160 (1983) (judicial notice may be taken of fact that item of personal property has some value). Had the State charged Charles with felony theft and failed to present any evidence of value equal to or greater than $1,000, any conviction would be subject to reversal and remand; and Charles could only be resentenced for misdemeanor theft. See *State v. Piland*, 217 Kan. 689, 693, 538 P.2d 666 (1975). Because of the presumption that property has some value, when the State puts on evidence of stolen private property in a theft case, it simultaneously puts on evidence of value, satisfying, at a minimum, the proof requirement for the misdemeanor level of the crime. See *Gomez*, 234 Kan. at 450-51. Only if the State seeks a guilty verdict on felony-level theft is it compelled to put on

proof of value equal to or exceeding $1,000. It need not disprove theft at that level to make a misdemeanor case.

*Subject Matter Jurisdiction to Impose Additional Restitution*

"[T]he determination of jurisdiction involve[s] questions of law over which this court's scope of review is unlimited." *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013).

Charles argues that the district court was without jurisdiction to set the amount of restitution for the victim named in Counts IX and XVIII through an order filed after the sentencing hearing. The outcome on this issue is controlled by our opinions in *State v. Hall*, 298 Kan. 978, 319 P.3d 506 (2014), and *Frierson*, 298 Kan. 1005, Syl. ¶¶ 7-9, 319 P.3d 515 (2014), and those decisions compel us to vacate the restitution ordered for the victim named in Counts IX and XVIII.

At the time of Charles' sentencing, the district judge stated that restitution "as contained within the presentence report will be ordered." He did not otherwise distinguish among the charges or victims. He did nothing to indicate that he realized the presentence investigation report gave no specific amount for the victim named in Counts IX and XVIII. He said nothing to preserve jurisdiction or to hold the sentencing or hearing open or to continue the matter to another date.

In *Hall*, we enunciated the standard practice a district judge should follow when he or she needs more time to determine an amount of restitution. Specifically, a district judge should expressly enter an order of continuance and conduct a second hearing in open court with the defendant present. Although we recognized in *Hall* that there have been no " 'magic words' " required from a district judge under *Cooper* and its progeny to continue a sentencing from one hearing to the next and enable setting of a final restitution amount, more than *nothing* has nevertheless been the rule. *Hall*, 298 Kan. at 987; see, *e.g.*, *Cooper*, 267 Kan. at 16, 18-19 (judge ordered restitution "with that amount to be determined within 30 days"); see also *State v. Phillips*, 45 Kan. App. 2d 788, 790-93, 253 P.3d 372 (2011) (defendant contested restitution amount at sentencing; parties agreed, judge ordered evidentiary

hearing on amount of restitution); *State v. Bryant*, 37 Kan. App. 2d 924, 925, 927-31, 163 P.3d 325 (judge ordered restitution with "amount to be determined within 30 days"), *rev. denied* 285 Kan. 1175 (2007); *State v. Lang*, No. 104, 714, 2011 WL 6943098, at *1-2 (Kan. App. 2011) (unpublished opinion) (restitution ordered but judge decided to "leave that amount open" for later hearing); *State v. Lewis*, No. 101,127, 2010 WL 2502873, at *5-6 (Kan. App. 2010) (unpublished opinion) (judge held issue of restitution "open"), *rev. denied* 292 Kan. 968 (2011); *State v. Wagoner*, No. 100,180, 2009 WL 1692248, at *1-2 (Kan. App. 2009) (unpublished opinion) (district court failed to reserve ruling on restitution at sentencing; lacked jurisdiction to increase restitution amount later). The judge's restitution procedure in this case did not even measure up to this relatively lax past standard.

Further, today we have reemphasized that, because restitution is a part of a defendant's sentence, sentencing is not final until any applicable restitution amount has been set. See *Hall*, 298 Kan. 978, Syl. ¶ 1; *Frierson*, 298 Kan. 1005, Syl. ¶ 7. Here, Charles' sentencing was complete at the conclusion of his sentencing hearing even though the amount in the PSI for one of the victims read "to be determined." Had the judge intended to have that amount included in Charles' restitution order, he could have continued sentencing to a later hearing date, preserving subject matter jurisdiction, and then finalized the missing restitution figure at a continued hearing in open court with Charles present. See *Hall*, 298 Kan. 978, Syl. ¶ 1. In the alternative, had the judge stated his intention to continue the proceeding and Charles validly waived his right to be present in open court for further hearing, the judge could have finalized restitution by written order. See *Frierson*, 298 Kan. 1005, Syl. ¶¶ 8-9. But none of this happened.

Under these facts, and the law of the past as well as the law we outline today in *Hall* and *Frierson*, the judge lacked subject matter jurisdiction to enter the order for additional restitution, and we are compelled to vacate the restitution award of $1,192.69 for the victim named in Counts IX and XVIII.

*Criminal History Score*

"The interpretation of a sentencing statute is a question of law over which this court exercises unlimited review." *State v. Ardry*, 295 Kan. 733, 735, 286 P.3d 207 (2012).

Charles argues that the use of his criminal history for sentencing purposes, without proving it to his jury beyond a reasonable doubt, increased his maximum possible penalty for his primary offense in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Charles acknowledges that this issue was decided against him in *Ivory*, 273 Kan. at 46-48, and includes the issue in order to preserve it for federal review. We continue to regard it as meritless.

## CONCLUSION

We affirm Charles' convictions and sentence, except for vacating the district court's order of $1,192.69 in restitution for the victim named in Counts IX and XVIII and the restitution vacated by the Court of Appeals due to Charles' acquittals on two charges.

Affirmed in part and vacated in part.