NOT DESIGNATED FOR PUBLICATION

No. 112,715

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD E. ELSTON, JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*


MEMORANDUM OPINION

Appeal from Douglas District Court; MICHAEL J. MALONE, judge. Opinion filed December 23, 2015. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kylie R. Kuhns*, legal intern, *Patrick Hurley*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., PIERRON, J., and HEBERT, S.J.


*Per Curiam*:  Richard E. Elston, Jr., was convicted by a jury of one count of aggravated burglary, two counts of misdemeanor theft, and one count of criminal use of a financial card. His motion for a new trial was denied, and his convictions and presumptive sentence were affirmed on direct appeal in *State v. Elston*, No. 99,341, 2009 WL 2242421 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1097 (2010). He then filed a K.S.A. 60-1507 motion claiming that his trial counsel was ineffective in several instances. The district court denied the motion after conducting an evidentiary hearing.

1

We affirm the judgment of the district court.

*Factual and Procedural Background*

On December 18, 2006, Elston was charged in Douglas County District Court with one count of aggravated burglary, a severity level 5 person felony; two counts of theft of property less than $1,000 in value, both class A nonperson misdemeanors; and one count of criminal use of a financial card, a class A nonperson misdemeanor. The charges stemmed from an incident in which a couple reported someone broke into their house at 4 a.m. and stole the woman's purse which contained her ATM cards, driver's license, and a Palm Pilot PDA. Approximately 1 hour after the burglary, Elston was caught on a surveillance camera withdrawing $300 from the victim's bank account. Police recovered the victim's Palm Pilot and driver's license at Elston's home.

Elston remained in the Douglas County jail during the pendency of the action. John C. Johnson represented him at trial. At trial, the State presented testimony from Larry Smith, an inmate who claimed to have been in the same "pod" as Elston in the Douglas County jail. Smith testified Elston told him that he and a man named Joey had been driving around smoking crack on the night of the burglary. He claimed Elston told him he kicked in the front door of a residence on Elm Street and stole a purse. Johnson cross-examined Smith and attempted to impeach him using his criminal history score and by establishing Smith was testifying in exchange for a favorable plea deal. In a later hearing on a motion for new trial, the district court called Johnson's impeachment of Smith "excellent."

Elston took the stand at trial and testified it was Joey, who was his wife's cousin, who stole the purse. He admitted he withdrew the money from the victim's bank account but claimed Joey gave him the ATM card and pin and told him to withdraw the money. Joey invoked his Fifth Amendment privilege against self-incrimination and was excused

from testifying. Elston also denied confessing to Smith in jail, claiming Smith obtained his paperwork and had learned all of the details about the case from the police reports.

Johnson also called Jacob Waldrup to the stand. Waldrup testified he had been at the Douglas County jail at the same time as Elston and Smith and that he had read the discovery from Elston's case because other inmates consider him a "jailhouse lawyer." Waldrup claimed Smith had said things to him that made him believe he was trying to find out more information about Elston's case.

At the conclusion of the case, the jury was instructed on the law and the elements of each charge. Pursuant to a request by defense counsel and after discussion on the record, the district court included both PIK Crim. 3d 54.01, the general presumption of intent, and PIK Crim. 3d 54.01-A, regarding the State's burden to prove intent and the definition of intent. The district court also instructed the jury to consider with caution the testimony of an informant.

The jury found Elston guilty as charged. Prior to sentencing, Johnson filed a motion for new trial alleging there was newly discovered evidence in the case. In the motion, Johnson claimed two witnesses from the Douglas County jail—Tony Ashcraft and Cody Larrick—had come forward with information that would support Elston's account that Smith had concocted the confession story using the police reports.

The district court held a hearing on the motion for new trial. Ashcraft and Armando Jimenez testified at the hearing they had been in the Douglas County jail at the same time as Elston and Smith and had witnessed Smith reading Elston's police reports. Two other witnesses were unavailable to testify because they either invoked their Fifth Amendment rights or were unable to be located. The district court denied the motion finding the new witnesses added nothing to the evidence except for issues concerning credibility, which usually do not warrant the need for a new trial. The court found the

3

witnesses' testimony would not have changed the outcome of the trial. It noted Johnson had impeached Smith at trial and had called a witness to corroborate Elston's story about Smith's access to the police reports. The court also mentioned that Smith's statements about Elston's confession had been corroborated by other evidence. The court found that this evidence, along with the cautionary jury instruction about Smith's credibility, was sufficient and the new witnesses would not have added anything substantial warranting a new trial.

Elston was sentenced to 130 months' imprisonment, and he appealed his convictions and sentencing issue. A panel of this court affirmed the district court. 2009 WL 2242421, at *3-7.

Through counsel, Elston filed a K.S.A. 60-1507 motion claiming his trial counsel was ineffective. Elston's ineffective assistance of counsel claims were based on four separate grounds: Counsel was ineffective for (1) failing to object to the presumption of intent instructions; (2) failing to hold the State to its burden of a unanimous verdict; (3) failing to request a directed verdict after the State allegedly failed to produce evidence regarding the ownership and value of the ATM debit card; and (4) not investigating or subpoenaing certain witnesses. The district court held an evidentiary hearing on the motion on May 1, 2012. Elston and his trial counsel Johnson both testified at the hearing. The district court denied the motion, and Elston timely appealed.

Elston's original 60-1507 motion also argued that his appellate counsel was also ineffective, but that claim has not been pursued on appeal and is not addressed in this opinion.

4

*The District Court Did Not Err In Denying Elston's K.S.A. 60-1507 Motion.*

Elston argues that the district court erred in denying his K.S.A. 60-1507 motion and again contends that his trial counsel was ineffective for the four reasons previously set forth and argued before the district court.

*Standards of Review*

Where the district court has conducted an evidentiary hearing on a K.S.A. 60-1507 motion, we review the underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts are reviewed de novo. See *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). Since Elston does not challenge the district court's findings of fact, we review the district court's legal conclusions de novo.

The now well-established standards used to analyze claims of ineffective assistance were set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). This test has been consistently followed and applied. See *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014); *Thompson v. State*, 293 Kan. 704, 715-16, 270 P.3d 1089 (2011).

Under the *Strickland* test, the movant must establish (1) that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant a fair trial. See *Miller*, 298 Kan. at 929. To establish prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with reasonable

probability meaning a probability sufficient to undermine confidence in the outcome. 298 Kan. at 934.

The purpose of the Sixth Amendment effective assistance guarantee is not to "improve the quality of legal representation" but to "simply ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689.

When applying the *Strickland* test, a reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time. *Thompson*, 293 Kan. at 715 (quoting *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 [2007]).

When considering a claim of ineffective assistance of counsel, a reviewing court must consider it is generally within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions. *Sola-Morales v. State*, 300 Kan. 875, 887-88, 335 P.3d 1162 (2014). Strategic decisions made by counsel after thorough investigation of the law and the facts are virtually unchallengeable. *Flynn v. State*, 281 Kan. 1154, 1157, 136 P.3d 909 (2006).

*The Intent Instructions*

Elston first argues that his trial counsel was ineffective for not only failing to object to a jury instruction, but for advocating its inclusion in the instructions ultimately given to the jury.

After a colloquy with counsel and repeated requests from defense counsel, the district court, with some apparent misgivings, instructed the jury in accordance with both PIK Crim. 3d 54.01 and PIK Crim. 3d 54.01-A, both dealing with the issue of intent. PIK Crim. 3d 54.01 states:

> "Ordinarily a person intends all of the usual consequences of (his)(her) voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

PIK Crim. 3d 5401-A states:

> "In order for the defendant to be guilty of the crime charged, the State must prove (his)(her) conduct was intentional. Intentional means willful and purposeful and not accidental.
> "Intent or lack of intent is to be determined or inferred from all the evidence in the case."

Elston claims his counsel was ineffective for advocating that the court give both intent instructions. He claims he was charged with two crimes requiring specific intent and the inclusion of both intent instructions may have misled the jury. He contends the two instructions conflict with one another and do not accurately instruct on the actual specific intent required for conviction.

In its decision denying Elston's K.S.A. 60-1507 motion, the district court admitted "Elston's counsel should not have asked for PIK Crim. 3d 54.01-A to be given since Elston was charged with specific intent crimes, and the court should not have given the instruction to the jury." The court, however, reviewed the instruction under a clearly erroneous standard and examined the instructions as a whole to determine there was no

7

prejudice by including PIK Crim. 3d 54.01-A. The court noted the specific intent required for aggravated burglary and theft was not at issue at trial. The question of who committed the crimes, not whether Elston had the intent to commit the crimes, was the primary issue for the jury to resolve and, therefore, there was no real possibility the jury could have rendered a different verdict had it not been given PIK Crim. 3d 54.01-A.

The question here is not whether the district court erred by acceding to counsel's requests to instruct the jury—the district court essentially acknowledged that it should not have given both instructions. The issues before us are whether Elston's trial counsel was ineffective for requesting the instruction, and, if so, whether Elston was prejudiced by such ineffective assistance. Since there was obviously no objection to the instruction, we apply a clearly erroneous standard to determine if the instruction was prejudicial. See K.S.A. 2014 Supp. 22-3414(3).

We apply a two-step process in determining whether the challenged instruction was clearly erroneous. First, we must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record. If we find error, we must assess whether we are firmly convinced the jury would have reached a different verdict without the error. See *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484, *cert. denied* 135 S. Ct. 728 (2014). "We examine 'jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.' [Citation omitted]." *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014).

As mentioned above, Elston takes issue with his trial counsel's request to include PIK Crim. 3d 54.01-A—General Criminal Intent—along with PIK Crim. 3d 54.01—Inference of Intent—in the jury instructions.

8

The Notes on Use under PIK Crim. 3d 54.01 state, in relevant part:

"This instruction must not be confused with PIK Crim. 3d 54.01-A, General Criminal Intent. The above instruction is a rule of evidence and does not deal with the required element of criminal intent necessary for conviction in those cases where criminal intent is a necessary element of the offense. [Citation omitted.]"

The Notes on Use under PIK Crim. 3d 54.01-A state, in relevant part:

"This instruction is not recommended for general use. The PIK instruction defining the crime should cover either specific or general criminal intent as an element of the crime. This instruction should be used only where the crime requires only a general criminal intent and the state of mind of the defendant is a substantial issue in the case. [Citations omitted.]"

Elston was charged with one count of aggravated burglary, one count of criminal use of a financial card of another, and two counts of theft. Each of these crimes requires a specific intent (aggravated burglary: intent to commit a theft therein; criminal use of a financial card of another: intent to defraud; and theft: intent to deprive). Therefore, according to the Notes on Use under PIK Crim. 3d 54.01-A, it was inappropriate for the district court to give the general criminal intent instruction because it is intended only to be used when a crime requires a general criminal intent.

The Kansas Supreme Court has, however, held that it is not error for a court to give the general intent instruction in trials for specific intent crimes. See *State v. Mitchell*, 262 Kan. 434, 442-44, 939 P.2d 879 (1997). In *Mitchell*, the defendant was on trial for felony murder, felony auto theft, criminal deprivation of property, and various misdemeanor traffic infractions. The jury was instructed using PIK Crim. 3d 54.01-A, and the defendant argued the instruction was clearly erroneous because his theft charges required a specific intent. The Kansas Supreme Court found the instruction was appropriate given the facts of the case and was most persuaded by the fact the jury was

instructed on the specific intent necessary for a conviction of theft. 262 Kan. at 444. The court held, when considering the jury instructions together and read as a whole, "the instruction's general statement of law does not conflict with the requirement of specific intent the jury was charged it had to find to convict Mitchell of theft." 262 Kan. at 444. The court noted that while it would have been better had the court not given the instruction, the instruction itself did not affect the outcome of the trial. 262 Kan. at 444.

The district court here likewise instructed the jury on all the elements of the specific intent crimes with which Elston was charged. The instructions for each of the crimes plainly stated the jury must find Elston guilty if it finds that he committed the crimes with the specific intent required. Although Elston would suggest that there is irreconcilable conflict in giving both instructions, the Kansas Supreme Court has also clarified that instructing the jury using PIK Crim. 3d 54.01 does not mislead the jury as to what the State is required to prove when used along with other instructions that instruct the jury as to each element of the crime. See *State v. Adams*, 292 Kan. 60, 80-81, 253 P.3d 5 (2011). There is likewise nothing in the language of PIK Crim. 3d 54.01-A that would mislead or confuse the jury regarding what level of intent was required for conviction.

Our analysis leaves us firmly convinced that in any event the jury would not have reached a different verdict had the court not given PIK Crim. 3d 54.01-A. The instructions did not change the requirement for the jury to find specific intent. We further note that intent was not even the primary issue in the trial, but rather the main thrust was the issue of identity—who committed the crime, Elston or someone else?

Because the instruction was not clearly erroneous and resulted in no prejudice to Elston, his counsel was not ineffective for requesting and not objecting to the court's instructions regarding intent, particularly as set forth in PIK Crim. 3d 54.01-A.

10

*Alternative Means/Unanimity*

Elston also argues that his trial counsel was ineffective because he failed to hold the State to its burden of a unanimous verdict. Specifically, he claims that his counsel failed to identify and argue that the theft instructions given to the jury presented an alternative means of committing the same crime, requiring a unanimity instruction which was not requested or given. In an alternative means case, the jury must be unanimous as to guilt for the single crime charged but does not have to be unanimous as to the particular means by which the crime was committed so long as there is substantial evidence to support each alternative means. *State v. Becker*, 290 Kan. 842, 854-55, 235 P.3d 424 (2010).

Elston was charged with theft under K.S.A. 2006 Supp. 21-3701(a)(1), which stated:

> "(a) Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:
> (1) Obtaining or exerting unauthorized control over property."

Elston claims the terms "obtaining" and "exerting" create alternative means to committing theft and that his counsel was ineffective for failing to raise the unanimity issue before the district court.

As noted by the district court, this court has specifically rejected this argument in *State v. Rollins*, 46 Kan. App. 2d 17, 22, 257 P.3d 839 (2011), *rev. denied* 293 Kan. 1112 (2012). The *Rollins* court found that there was "no quantifiable difference" between the actions that constituted exerting and obtaining control, noting:

11

"One must necessarily obtain property one has exerted control over, and one must necessarily exert control over property one has obtained.

"Therefore, although stated in the disjunctive in K.S.A. 21-3701(a)(1), the terms are not different as they relate to the substantive elements of theft; they merely describe the same conduct. Consequently, this is not an alternative means case." 46 Kan. App. 2d at 22.

Although the Kansas Supreme Court denied review in the *Rollins* case, this court's decision has been reaffirmed in multiple cases. See, *e.g.*, *State v. Snover*, 48 Kan. App. 2d 298, Syl. ¶ 2, 287 P.3d 943 (2012), *rev. denied* 299 Kan. 1273, *aff'd on other grounds by State v. Betancourt*, 299 Kan. 131, 322 P.3d 353 (2014); *State v. Ramsey*, No. 107,742, 2013 WL 5507284 (Kan. App. 2013) (unpublished opinion), *rev. denied* 300 Kan. 1106 (2014); *State v. Holt*, No. 106,711, 2013 WL 517657 (Kan. App. 2013) (unpublished opinion), *rev. denied* 297 Kan. 1251 (2013).

Elston provides no reason why this court should depart from *Rollins.* In the face of settled law, counsel was not ineffective for failing to address an alternative means issue at trial.

*Motion for Directed Verdict*

Elston also claims his counsel was ineffective for failing to request a directed verdict at the conclusion of the State's evidence. Elston argues the State had not proven an element of the crime, the value of the stolen ATM card, and the outcome of the trial would likely have been different had his counsel moved for a directed verdict.

Elston was charged with misdemeanor theft under K.S.A. 2006 Supp. 21-3701(a)(1) for the theft of the ATM debit card which the State valued at less than $1,000. He claims the State presented no evidence to prove the value of the ATM debit card, which is an essential element of the crime.

12

The district court rejected this argument finding the Kansas Supreme Court's decision in *State v. Gomez*, 234 Kan. 447, 450-51, 673 P.2d 1160 (1983), provides guidance. In *Gomez*, the Kansas Supreme Court found all personal property has some value, even if it is just a "small token value," and upheld a robbery conviction where the defendant stole "funny money" from the victim, finding the district court properly took notice of the nominal value of the stolen property. 234 Kan. at 450-52

The Kansas Supreme Court cited *Gomez* in its decision *State v. Charles*, 298 Kan. 993, 1001-02, 318 P.3d 997 (2014). In *Charles*, the court held the State did not have to prove the value of property when prosecuting a misdemeanor theft case because all property has *some* value:

> "Because of the presumption that property has some value, when the State puts on evidence of stolen private property in a theft case, it simultaneously puts on evidence of value, satisfying, at a minimum, the proof requirement for the misdemeanor level of the crime. [Citation omitted.] Only if the State seeks a guilty verdict on felony-level theft is it compelled to put on proof of value equal to or exceeding $1,000." 298 Kan. at 1001-02.

Here, the State charged Elston with misdemeanor theft of the ATM debit card. Based on the Kansas Supreme Court's holding in *Charles*, the State effectively put on evidence of the value of the ATM debit card when it elicited testimony from the victim that her ATM card was stolen. Elston's counsel was not ineffective for failing to move for a directed verdict because his motion would not have been granted.

*Potential Witnesses*

The State called Smith to testify at trial. Smith claimed he was in jail with Elston and Elston confessed the crime to him. Elston denied confessing to Smith and asserted Smith got the information about the crime by looking at police reports. Elston's counsel also called Waldrup, another inmate who was in jail at the same time as Smith and

Elston, to impeach Smith's testimony. Elston, however, claimed he gave his trial counsel the name of Waldrup and multiple other inmates who could corroborate his story, but his counsel did not investigate, interview, or subpoena those witnesses to testify at trial. He contends that his counsel was ineffective because had he called these witnesses at trial, the outcome would have been different.

When reviewing an attorney's decisions at trial in an ineffective assistance claim, a reviewing court must consider it is generally within the province of a lawyer to decide what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions. *Sola-Morales*, 300 Kan. at 887-88. Strategic decisions made by counsel after thorough investigation of the law and the facts are virtually unchallengeable. *Flynn*, 281 Kan. at 1157.

Elston's counsel filed a motion for new trial alleging he had newly discovered evidence in the form of testimony from Elston's fellow inmates. The district court held an evidentiary hearing on the motion and heard testimony from Ashcraft and Jimenez who claimed they had been in the Douglas County jail at the same time as Elston and Smith and had witnessed Smith reading Elston's police reports. Two other witnesses were unavailable to testify because they either invoked their Fifth Amendment rights or were unable to be located.

The district court denied the motion for new trial finding the new witnesses added nothing to the evidence except for issues concerning credibility, which did not necessitate a new trial. The court noted that Johnson had done an "'excellent job'" impeaching Smith at trial and had even called a witness to corroborate Elston's story about Smith's access to the police reports. The trial court also mentioned that Smith's statements about Elston's confession had been corroborated by other evidence that was not available in the police report. The court had also instructed the jury in accordance with PIK Crim. 3d 52.18-A that it should consider the testimony of an informant, such as Smith, with caution. Based

14

on the totality of the circumstances, the court determined that the testimony of the proposed witnesses would not have changed the outcome of the trial.

At the K.S.A. 60-1507 hearing, Johnson testified he could not specifically remember Elston providing him names of other impeachment witnesses but would not deny it happening. He testified he would not have done anything differently in Elston's trial and it was likely that even if he had known about these other witnesses, he might not have been able to find them for lack of investigative resources.

The district court found Johnson was not ineffective because the outcome of the trial would not have been different had the additional witnesses testified on behalf of the defense. The court again found Johnson rigorously cross-examined Smith, exposed his extensive criminal history, and also called Waldrup as an impeachment witness. The court also noted Smith testified to details about the crime that were not included in the police report he allegedly read and that these details would only be known to someone who had first-hand knowledge of the crime. This fact could not have been diminished by additional witnesses who could testify they saw Smith reading Elston's police report.

On appeal, Elston argues that even rigorous cross-examination is not a substitute for impeachment witness testimony. It is telling, however, that even though Elston was able to suggest several potential such witnesses for the new trial motion hearing, some were unavailable or unwilling to testify.

Elston has failed to make a case for how additional witness testimony would have affected the outcome of the trial. Johnson effectively cross-examined the State's witness, and did, in fact, call an impeachment witness at trial. The State presented other corroborating evidence, and the jury was correctly instructed to consider the testimony of the informant with caution. We are persuaded that the district court properly determined

15

Johnson was not ineffective for not investigating or subpoenaing other impeachment witnesses at trial.

The judgment of the district court denying Elston's K.S.A. 60-1507 motion is affirmed.

Affirmed.