IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 112,509
112,510

STATE OF KANSAS,
*Appellee*,

v.

TRACEY JEROME TOLIVER,
*Appellant.*

SYLLABUS BY THE COURT

1.

The fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. When the statutory language is plain and unambiguous, an appellate court simply interprets the language as it appears, without speculating and without reading into the statute language not readily found there.

2.

If the statute's language or text is unclear or ambiguous the court uses canons of construction or legislative history or other background considerations to construe the legislature's intent.

3.

Courts construe statutes so as to avoid unreasonable or absurd results and presume the legislature does not intend to enact useless or meaningless legislation.

4.

When a court construes language that involves all the nouns or verbs in a series and there is a straightforward, parallel construction, a prepositive or postpositive modifier normally applies to the entire series unless context indicates a different construction or the resulting construction would be irrational or absurd.

5.

K.S.A. 2013 Supp. 21-5413(c)(3)(D) governs battery against city or county correctional officers or city or county correctional employees.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 18, 2015. Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed April 14, 2017. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, the sentence is vacated, and the case is remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Wesley M. Webber*, legal intern, was with him on the briefs for appellant.

*Barry K. Disney,* senior deputy county attorney, argued the cause, and *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MALONE, J.: The State requests this court review an unpublished opinion by the Court of Appeals reversing Tracey Toliver's conviction of felony battery against a law enforcement officer. For the reasons set out below, we affirm the judgment of the Court of Appeals.

On February 18, 2014, Brian Johnson, a detective for the Riley County Police Department, was assigned to the department's Investigations Division. He assisted in executing a search warrant at a residence in Manhattan. Johnson wore a vest identifying him as a law enforcement officer.

Toliver was at the residence, and he responded aggressively to the police during the search by shouting profanities and racially derogatory statements at them. Detective Johnson was assigned the task of detaining Toliver while his fellow officers completed the search. Johnson escorted Toliver from the residence and placed him in the back seat of his police car. Johnson sat in the front, and a partition between the front and the back was open to allow conversation.

In the course of searching the residence, police found drugs and paraphernalia in close proximity to personal items belonging to Toliver. They signaled to Johnson that he should consider Toliver under arrest. Toliver asked when he could be released, and as Johnson began to answer, Toliver shouted profanities and derogatory statements at him. Toliver then leaned forward so that his face was near the open partition and spat on Johnson's right hand. Johnson closed the partition and wiped the saliva from his hand. He then transported Toliver to the Riley County Jail.

After receiving clearance from a jailer, Johnson drove through a gated entrance at the jail. He proceeded into the "sally port," a structure with doors on either end of it. The sally port serves as a secure holding area for removing a prisoner from a car; both doors to the port are shut after the car enters the structure. Per jail policy, Johnson secured his firearm in a locker so it would not be "accessible to any of the prisoners." Johnson then remained behind his car as jailers attempted to coax Toliver out of the vehicle. Toliver was refusing to get out until he was told why he was being arrested. In an effort to

3

mollify Toliver, Johnson walked over to tell him "again" what the charge was. At this time, Toliver stated, "Now I spit on you, bitch," and he spat in Johnson's face.

Because he spat on Johnson, Toliver was taken to a local hospital later that day where a court-ordered blood test for infectious diseases was performed. In the waiting room, an escorting officer heard Toliver mutter, "[Expletive] will get a bullet to the head someday. Real talk."

The State filed multiple complaints against Toliver based on the various incidents of spitting, comments to officers, and drugs and drug paraphernalia found at the residence. On Toliver's motion, two of the complaints were consolidated. After the State voluntarily dismissed the possession of drug paraphernalia count, Toliver requested a bench trial. The court found him not guilty of unlawful possession of a controlled substance, guilty of battery against a law enforcement officer, guilty of felony battery against a city or county employee by a confined person, and guilty of two criminal threats. The court sentenced him to 114 months for the felony battery, 12 months for the battery against a law enforcement officer, and 6 months and 15 months for the criminal threat convictions, all running concurrently.

Toliver timely appealed and the cases were consolidated. The Court of Appeals reversed his conviction for felony battery against a law enforcement officer as charged under K.S.A. 2013 Supp. 21-5413(c)(3)(D), holding that the State failed to prove that Johnson was a correctional officer or employee.

The State maintains that it satisfied the statutory definition of felony battery because it only needed to show that Johnson was a county employee engaged in work at the county jail. We granted the State's petition for review.

4

The State chose to prosecute Toliver under a theory of battery that would result in a felony conviction if all elements of K.S.A. 2013 Supp. 21-5413(c)(3)(D) were proved. In Count 3 of its amended complaint, the State alleged:

"That on the 18th day of February, 2014, in Riley County, Kansas, Tracey Jerome Toliver, while confined in a county jail facility, then and there being present did unlawfully, feloniously and knowingly cause physical contact in a rude, insulting or angry manner to Brian Johnson, *a city or county employee*, while such employee was engaged in the performance of his duty. In violation of K.S.A. 2013 Supp. 21-5413(c)(3)(D), Battery on a City Employee by Confined Person, a severity level 5 person felony. (Penalty: K.S.A. 2013 Supp. 21-6804, 21-6807 & 21-6611.)" (Emphasis added.)

Toliver maintains on appeal that the complaint failed to charge a felony under the wording of the statute, both because Johnson was not a correctional officer or correctional employee and because Toliver was not confined in a city holding facility or county jail when the event occurred.

Issues of statutory interpretation and construction raise questions of law subject to de novo review. *State v. Charles*, 298 Kan. 993, 997, 318 P.3d 997 (2014). When a defendant challenges the sufficiency of the evidence introduced to obtain a conviction under a properly construed statute, the standard of review is whether a review of all the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. 298 Kan. at 997.

K.S.A. 2013 Supp. 21-5413, in effect at the time of the events leading to the charges, defines battery. In relevant part, it reads:

"(a) Battery is:

5

. . . .

(2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner.

. . . .

"(c) Battery against a law enforcement officer is:

(1) Battery, as defined in subsection (a)(2), committed against a:

. . . .

(B) uniformed or properly identified state, county or city law enforcement officer, other than a state correctional officer or employee, a city or county correctional officer or employee or a juvenile detention facility officer, or employee, while such officer is engaged in the performance of such officer's duty;

. . . .

(3) battery, as defined in subsection (a) committed against a:

. . . .

(D) city or county correctional officer or employee by a person confined in a city holding facility or county jail facility, while such officer or employee is engaged in the performance of such officer's or employee's duty.

. . . .

"(g) . . . .

(3) Battery against a law enforcement officer as defined in:

(A) Subsection (c)(1) is a class A person misdemeanor;

. . . .

(C) subsection (c)(3) is a severity level 5, person felony.

. . . .

"(h) As used in this section:

. . . .

(5) 'city or county correctional officer or employee' means any correctional officer or employee of the city or county or any independent contractor, or any employee of such contractor, working at a city holding facility or county jail facility . . . ."

6

In reversing Toliver's felony battery against a law enforcement officer conviction, the Court of Appeals agreed with Toliver's argument that Detective Johnson was not "a city or county correctional officer or employee." To resolve the issue we must parse that phrase and apply the resulting construction to the facts before us. Toliver would read the phrase as meaning "a city or county correctional officer or a city or county correctional employee." The State would read it as meaning "a city or county correctional officer" or "a city or county employee." Consistent with its position that Johnson needed only to be a city or county employee, the State neither alleged nor attempted to prove Johnson was a correctional officer or a correctional employee at trial. Indeed, the State conceded that Johnson was neither a correctional officer nor a correctional employee.

The fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. When the statutory language is plain and unambiguous, an appellate court simply interprets the language as it appears, without speculating and without reading into the statute language not readily found there. The statutory language itself is our paramount consideration because "the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used. [Citations omitted.]" *State v. Nguyen*, 304 Kan. 420, 422, 372 P.3d 1142 (2016).

This rule is not helpful in the present case because the wording of the statute is ambiguous. As the sentence is written, the word "correctional" may modify both "officer" and "employee," or it may modify only "officer," the noun it immediately precedes. If the statute's language or text is unclear or ambiguous the court uses "'canons of construction or legislative history or other background considerations to construe the legislature's intent. [Citation omitted.]'" See *City of Dodge City v. Webb*, 305 Kan. 351, 356, 381 P.3d 464 (2016) (quoting *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 [2010]).

To guide us to the correct construction of this statute, we apply the common rules of English grammar. As a general rule,

> "'an initial modifier "will tend to govern all elements in the series unless it is repeated for each element."' *Washington Educ. Ass'n v. National Right to Work Legal Defense Foundation, Inc*., 187 Fed. Appx. 681, 682 (9th Cir. 2006) (unpublished opinion) (quoting The American Heritage Book of English Usage 53 [1996]). This court has, on occasion, applied this rule when interpreting a statute. *E.g*., *Rounsavell v. Tipton*, 209 Kan. 366, 367-68, 497 P.2d 108 (1972) (in statute requiring service by '"restricted registered or certified mail,"' the adjective 'restricted' modified both 'registered' and 'certified mail'); *Hulme v. Woleslagel*, 208 Kan. 385, 390, 395, 493 P.2d 541 (1972) (in statute requiring change of judge for '"personal bias, prejudice, or interest of the judge,"' the word 'personal' appeared 'as an adjective modifying the nouns bias, prejudice, or interest')." *Cady v. Schroll*, 298 Kan. 731, 739, 317 P.3d 90 (2014).

This understanding of how adjectives modify nouns in sequences or phrases finds support in many other jurisdictions. For example, the Kentucky Supreme Court has held:

> "Where several things are referred to in the statute, they are presumed to be of the same class when connected by a copulative conjunction unless a contrary intent is manifest. [Citation omitted.] It is also widely accepted that an adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase. In other words, the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears. [Citations omitted.]" *Lewis v. Jackson Energy Co-op Corp*., 189 S.W.3d 87, 92 (Ky. 2005).

See also *Porto Rico Ry. Co. v. Mor.*, 253 U.S. 345, 348, 40 S. Ct. 516, 64 L. Ed. 944 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."); *Ward General Ins. Services, Inc. v. Employers Fire Ins. Co*., 114 Cal. App. 4th 548, 554, 7 Cal. Rptr. 3d 844 (2003) ("Most readers

expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears."); *Ryder v. USAA Gen. Indem. Co*., 938 A.2d 4, 2007 NE 146, ¶ 5 (2007) (noting "standard grammatical rule that when an adjective modifies the first of a series of nouns, a reader will expect the adjective to modify the rest of the series as well [*i.e.* 'bodily injury, (bodily) sickness, or (bodily) disease']"; The American Heritage Book of English Usage 343 (1996) (under generally accepted rules of syntax, an initial modifier "will tend to govern all elements in the series unless it is repeated for each element").

Antonin Scalia and Bryan A. Garner, in Reading Law:  The Interpretation of Legal Texts 147 (2012), explain that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." They provide the following classic example:

"The Fourth Amendment begins in this way, with a prepositive (pre-positioned) modifier (unreasonable) in the most important phrase:  'The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable searches and seizures*, shall not be violated . . . .' The phrase is often repeated:  *unreasonable searches and seizures*. Does the adjective unreasonable qualify the noun *seizures* as well as the noun *searches*? Yes, as a matter of common English. . . . In the absence of some other indication, the modifier reaches the entire enumeration."

The State asks us to not apply this widely accepted rule of grammar in the present case, so that we would construe the modifying phrase "city or county" to apply to both *officer* and *employee* but would limit "correctional" to modify only *officer*. The State argues that this selective reading is appropriate because the phrase "correctional officer" is a "term of art," whereas the phrase "correctional employee" lacks legal significance. We find no merit in these arguments.

9

While it is not always easy to define a "term of art," we note that the Kansas Legislature has defined the phrase "correctional employee" and "corrections employee" in the context of other statutes. See K.S.A. 74-4914e(1)(a); K.S.A. 65-6015(b). More significantly, the legislature has used the phrases "officer or employee" and "officers or employees" to describe a collective entity over 700 times in more than 300 statutes. See, *e.g.*, K.S.A 13-14,103; K.S.A. 19-2649; K.S.A. 22-4407; K.S.A. 38-1819(a); K.S.A. 40-2807; K.S.A. 44-1403; K.S.A. 49-402e; K.S.A. 58-1404; K.S.A. 60-521; K.S.A. 2016 Supp. 71-201b; K.S.A. 73-213; K.S.A. 74-4902; K.S.A. 75-5202; K.S.A. 75-5226; K.S.A. 79-3234; K.S.A. 83-322. The legislature's regular and repeated use of this phrase demonstrates a clear intent that the words "officer or employee" constitute a single unit to be modified together by a preceding adjective and not—as the State urges—to describe two separate and distinct entities.

In the absence of some contextual indication that the legislature intended the word "correctional" to modify only "officer," the general rule governing modifiers of nouns in a sequence will apply. Here, the context of the statute clearly supports application of this general rule of grammar. Accordingly, the word "correctional" modifies both "officer" and "employee" in the phrase "officer or employee."

Indeed, the statute would present some curious results if we ignored these rules of syntax and accepted the State's argument that all city and county employees are covered by K.S.A. 2013 Supp. 21-5413(c)(3)(D).

*While City and County Law Enforcement Officers Would Be Covered, State Law Enforcement Officers Would Not Be.*

First, K.S.A. 2013 Supp. 21-5413(c) criminalizes battery against state and university law enforcement officers as a misdemeanor. Understandably, it classifies

10

battery against county and city law enforcement officers as the same class A misdemeanor. The State contends that the legislature intended to turn those misdemeanors into felonies when city and county law enforcement officers are subjected to battery within the confines of a county jail. The State's position produces an odd result: When a state-employed police officer, such as a Kansas Highway Patrol or a campus police officer, delivers a prisoner to a county jail and is spat upon, the result is a misdemeanor, but when a city police officer or county sheriff deputy delivers the same prisoner to the same jail and is battered in the same way, the result is a felony.

By following standard rules of grammar, the result is a more sensible understanding of the statute: The legislature intended special protection for correctional officers and other correctional employees of county jails, recognizing their need for maintaining order within a corrections facility and their typically unarmed status. See *State v. Perez-Moran*, 276 Kan. 830, 839-40, 80 P.3d 361 (2003) ("structure of the statute demonstrates an intent to promote order and safety in prisons, juvenile facilities, and jails by providing a stronger deterrent to inmates contemplating battering an officer or employee").

*The Exclusionary Language of the Statute Would Be Meaningless.*

Second, the plain language of K.S.A. 2013 Supp. 21-5413(c)(1)(B) requires the victim to be a "law enforcement officer" engaged in the performance of the officer's duty, so there would be no reason for the statute then to exclude any city or county employee who is not a law enforcement officer, and yet that is the State's argument. The phrasing "other than" would be meaningless and nonsensical if the legislature intended the phrase "city or county correctional officer or employee" to mean all city or county employees, rather than correctional officers or correctional employees.

11

*The Statute Would Become Self-Nullifying.*

Finally, as noted by the Court of Appeals, K.S.A. 2013 Supp. 21-5413(c)(1)(B) defines one kind of battery against a law enforcement officer to be battery committed against a "uniformed or properly identified . . . county or city law enforcement officer, *other than . . . a city or county correctional officer or employee . . .* while such officer is engaged in the performance of such officer's duty." (Emphasis added.) Under the State's construction, the statute would nullify itself by excluding *all* city or county employees and, at the same time, including all city or county employees who are law enforcement officers. Such a conflicting construction produces the kind of unreasonable or absurd result that we seek to avoid. See, *e.g.*, *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013) (courts construe statutes to avoid unreasonable or absurd results and presume legislature does not intend to enact useless or meaningless legislation).

Detective Johnson testified he was not a correctional officer when he was in the sally port. He was assigned to the police department's Investigations Division, he was dressed in the uniform of that division, he had transported a person he had arrested to the jail, and he was obliged to follow the orders of the correctional officers while in the jail facility. In other words, Johnson was performing the itinerant duties commonly associated with many in law enforcement. Although he was a county employee, he was not a correctional employee at the time he delivered Toliver to the county jail for booking by the correctional staff. Driving his patrol car across the jail perimeter did not transform him from a "law enforcement officer" into a "correctional employee" under the same statute.

As the Court of Appeals determined, we need not reach Toliver's second argument regarding whether he was confined in jail at the time of the second spitting incident. He

12

was convicted of a crime for which the State failed to charge or prove all of the elements. Accordingly, we vacate the felony conviction and sentence for battery against a law enforcement officer. The decision of the Court of Appeals is affirmed. The judgment of the district court is reversed, and the case is remanded for resentencing in conformity with this opinion.

ROSEN, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case Nos. 112,509 and 112,510 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.