NOT DESIGNATED FOR PUBLICATION

No. 125,467

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY MARTIN PATTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Labette District Court; STEVEN A. STOCKARD, judge. Submitted without oral argument. Opinion filed November 22, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

No appearance by appellee.

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

PER CURIAM: After engaging in mediation, Jeffrey Patton pleaded no contest to second-degree intentional murder and aggravated kidnapping, both stemming from the events leading to the death of Patton's adult son. Patton later moved to withdraw his plea, arguing he had been taking medication that affected his reasoning and had been pressured into the pleas by his attorney; he also disputed the factual basis for the aggravated-kidnapping conviction. The district court held an evidentiary hearing on these claims but ultimately denied Patton's motion.

Patton now appeals that decision, repeating his earlier assertions. He also claims the district court erred when it denied a previous request for self-defense immunity. And he challenges the district court's jurisdiction to enter its restitution order at sentencing. Having carefully reviewed Patton's arguments and the record, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In August 2015, the State charged Patton with premeditated first-degree murder after he fatally shot his son, Preston, outside of Patton's house in Parsons. The State presented evidence about the events leading up to this incident at a preliminary hearing, where five witnesses testified. The State also played a recording of a 911 call that Patton had made before the shooting occurred, where he stated that there had been "a murder." Highly summarized, the witnesses indicated that Preston's body was found in the middle of the road near a trailer when the police arrived; Preston had been shot several times in the chest and was dead. One of Preston's friends testified that he had seen Preston and Patton engage in a verbal altercation that became physical moments before Preston was killed. The district court found probable cause to bind Patton over on the murder charge.

Before trial, Patton filed a motion seeking immunity from prosecution under K.S.A. 21-5231, asserting he had been acting in self-defense and was justified in using deadly force against his son. The district court held a hearing on this self-defense immunity motion in November 2016 in front of the same district judge who presided over the preliminary hearing. The evidence presented largely mirrored the evidence at the preliminary hearing, and the court denied Patton's immunity motion.

*Patton's plea and sentence*

After Patton's request for immunity was denied, he participated in a criminal mediation with a mediator and the prosecutor, resulting in a plea agreement. Patton agreed to enter no-contest pleas to amended charges of second-degree intentional murder and aggravated kidnapping, and the State agreed to dismiss the first-degree murder charge. The written plea agreement stated that Patton acknowledged that the court must be satisfied that there was a factual basis for each of these charges before it accepted his plea; he agreed "there would be a reasonable likelihood of conviction" for each and initialed over the two amended charges. Patton also acknowledged that the State would recommend the aggravated presumptive sentence under the Kansas Sentencing Guidelines for each of these crimes—165 months in prison—and would recommend that the sentences be served consecutively.

The court held a hearing on Patton's plea in January 2017, again with the same district judge presiding. At the hearing, the district court asked Patton a series of questions about his understanding of the plea agreement and his rights to ensure that his plea was knowingly and voluntarily made: The district court asked Patton if the description of the plea agreement described above reflected his understanding of it. It asked if he understood that a no-contest plea is treated just like a guilty plea or being convicted by a jury for sentencing purposes. And it asked if Patton understood that by pleading no contest, he would give up his right to a jury trial where the State would be required to prove his guilt and where he could present evidence and testify on his own behalf. Patton answered yes to each question.

The court then asked Patton if he wished to plead to the amended charges. Patton replied, "Yes, sir." Patton confirmed that his decision was voluntary and that nobody had threatened him or forced him into it. Patton also stated that he had discussed the plea and his rights with his trial attorney, Edward Battitori. Patton confirmed that he and Battitori

had also discussed going to trial and his possible defenses. Patton agreed that he was satisfied with Battitori's advice. Lastly, Patton denied being under the influence of alcohol, drugs, or any prescription medication that would affect his ability to understand what he was doing.

The court then asked the State to provide a factual basis for the amended charges. The prosecutor read the amended complaint into the record and noted that the district court had presided over the preliminary hearing. Patton and his attorney both verbally agreed that the State could prove the amended charges at trial. The court accepted Patton's no-contest plea—finding that it was freely and voluntarily made—and convicted him of the second-degree intentional murder and aggravated kidnapping.

Patton's sentencing hearing was held in March 2017. The district court followed the parties' recommendation and sentenced Patton to consecutive sentences of 165 months' imprisonment for each charge. The parties and the court also discussed restitution, and the State indicated it would be seeking $16,916.36—the amount of Preston's funeral bills. Patton's counsel indicated the defense would consider whether to object to this amount and would keep the court apprised of that decision; the court indicated that if Patton did not object, it would order restitution in the amount requested. Patton initially objected but then withdrew that objection a few months later. The journal entry of sentencing, filed in June 2017, ordered Patton to pay $16,916.36 in restitution.

*Efforts to withdraw Patton's plea*

In January 2018, about 10 months after his sentencing hearing, Patton submitted a pro se motion to withdraw his no-contest plea. In his motion, Patton argued that the district court lacked a sufficient factual basis to accept his plea to aggravated kidnapping. Instead, he asserted his plea agreement had resulted from his attorney's actions—not determining whether Patton was competent to stand trial or enter a plea, coercing Patton

4

to enter into the plea agreement, recommending that Patton conceal his mental health issues and medication, and not advising Patton on his self-defense claim and his right to testify.

The district court appointed an attorney to represent Patton on his motion. For reasons unimportant to our discussion, litigation of Patton's motion was delayed for some time, but the court held an evidentiary hearing on his request in June 2022. Patton and Battitori—Patton's previous attorney—both testified at the hearing. The court also heard from Patton's brother and a nurse from Labette County jail.

Patton testified that he remembered participating in the mediation. He also stated that Battitori gave him a copy of the plea agreement and reviewed it with him before he signed it. But Patton maintained that Battitori compelled him to plead to the aggravated-kidnapping charge even though Patton "didn't want to plead guilty to something [he] didn't do." Patton stated that Battitori told him that he "could either sign the agreement, and go along with the deal, maybe get out of prison, or not sign it and do [a] hard 50" sentence. Patton noted that Battitori had not explained that a no-contest plea effectively meant that he would be found guilty of the crimes. Instead, Patton said he believed "the judge would step in because there was no evidence of kidnapping."

Patton also testified he told Battitori that because of the incident, he was diagnosed with PTSD and depression and was prescribed Zoloft. Patton stated that he did not list the medication on his plea agreement because Battitori "told [him] not to worry about it." Patton explained that Zoloft made his brain "[k]ind of foggy" and affected his ability to think clearly. Patton stated that he had told Battitori he was suicidal when he signed the plea agreement, but Battitori told him "not to let the [c]ourt know." Patton did not ask Battitori for a competency evaluation.

5

Battitori denied these allegations. The attorney testified that he did not recommend that Patton make misrepresentations to the court and did not recall Patton expressing that he was suicidal or taking Zoloft, though Patton had mentioned taking some sort of prescribed medication. Battitori could not recall what the factual basis for the aggravated-kidnapping plea was, but he stated that he "would be surprised if there wasn't [a factual basis]" and would have objected if so. Battitori expressed that he did not force Patton into the plea agreement, that he reviewed the agreement with Patton multiple times, and that Patton understood the agreement and its benefits.

After hearing this evidence, the district court denied Patton's request to withdraw his pleas. The court found that Patton entered the plea knowingly and voluntarily. The court found that Patton understood the nature of the proceedings, the amended complaint, and the consequences of the plea. And the court found that Patton's testimony lacked credibility, was self-serving, and ignored the benefit he got from the bargain. The court also found that the plea court had a sufficient factual basis to accept Patton's plea to aggravated kidnapping. This appeal followed.

DISCUSSION

Patton now challenges three of the district court's rulings. He claims the district court erred when it denied his motion to withdraw his plea. He also asserts the court erred when it denied his earlier request for self-defense immunity, and he challenges the district court's restitution order. For the reasons we explain here, we do not find these arguments persuasive. Thus, we affirm the district court's judgment.

1. *Patton's motion to withdraw his plea*

K.S.A. 22-3210(d) sets forth separate standards for evaluating a motion to withdraw a plea, depending on the timing of the motion. Before sentencing, a person may

withdraw a plea by demonstrating good cause for their request. K.S.A. 22-3210(d)(1). But after sentencing, an elevated standard applies; the person wishing to withdraw a plea must show manifest injustice would result if the plea remained in place. K.S.A. 22-3210(d)(2). In either event, the person seeking to withdraw a plea bears the burden of persuading the court that they are entitled to relief. *State v. Adams*, 311 Kan. 569, 574, 465 P.3d 176 (2020).

Manifest injustice is something "obviously unfair or shocking to the conscience." *State v. Terning*, 57 Kan. App. 2d 791, Syl. ¶ 5, 460 P.3d 382, *rev. denied* 312 Kan. 901 (2020). Three factors—often referred to as the *Edgar* factors, for *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006)—generally guide courts' consideration of whether someone has shown that maintaining a plea would result in manifest injustice. These factors include "(1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made." *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010). But while these factors establish "viable benchmarks" for a court when faced with a plea-withdrawal motion, other considerations may take precedence in a particular case, including whether there was a sufficient factual basis to support the defendant's conviction. 290 Kan. at 512; see *State v. Ebaben*, 294 Kan. 807, 812-16, 281 P.3d 129 (2012) (considering factual basis for plea under the presentence good-cause standard).

Within these parameters, district courts have discretion to determine whether the withdrawal of a plea is appropriate. *State v. Green*, 283 Kan. 531, 545, 153 P.3d 1216 (2007). On appeal, a person challenging a district court's denial must establish that the court abused its discretion. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A court abuses its discretion if its decision is arbitrary, fanciful, or unreasonable, or based on a legal or factual error. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

Patton argues that when the district court denied his postsentence request to withdraw his no-contest pleas, it abused its discretion for two reasons: (1) because the district court lacked a factual basis to accept his plea to aggravated kidnapping and (2) because the *Edgar* factors leaned in his favor. Neither argument is persuasive.

### 1.1.    *Factual basis to accept Patton's plea to aggravated kidnapping*

K.S.A. 22-3210 allows a district court to accept a plea when, among other requirements, "the court is satisfied that there is a factual basis for the plea." K.S.A. 22-3210(a)(4). This means that a court must determine that there is "a factual basis for the elements of all offenses." *State v. Hill*, 311 Kan. 872, 877, 467 P.3d 473 (2020).

Kansas courts have recognized that the factual basis for convictions arising from no-contest pleas may be more difficult to ascertain from the record, as defendants entering these pleas generally do not admit to the facts leading to their convictions. See *Ebaben*, 294 Kan. at 812-13. But this requirement may be satisfied when a complaint or information that "sets forth the factual details and essential elements of the particular crime charged" is read into the record, when the prosecutor or defendant presents a factual statement at the plea hearing, or based on the evidence presented at an earlier evidentiary hearing where the same judge presided. 294 Kan. at 813.

There is no constitutionally imposed quantum of evidence to accept a plea. Instead, district courts have discretion to determine whether a sufficient factual showing has been made to support the defendant's plea. *Edgar*, 281 Kan. at 43-44. As the *Edgar* court explained, this evaluation is at its core tied to the court's assessment whether the plea was entered into voluntarily:

> "[K.S.A. 22-3210(a)(4)] leaves it to the court's determination whether the evidence is sufficient to establish the elements of the crime and satisfy the court that the plea is voluntary. If a defendant is continuing to protest innocence, the trial court, in the exercise

8

of its discretion, may not consider the plea voluntary if the evidence is not strong. That judgment is left to the court's discretion and our standard of review is abuse of discretion." 281 Kan. at 44.

Turning to the facts before us, Patton pleaded no contest to aggravated kidnapping, so the court had to find a factual basis for that crime to accept Patton's plea. As it applies to Patton, aggravated kidnapping is "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . to inflict bodily injury or to terrorize the victim or another . . . when bodily harm is inflicted upon the person kidnapped." K.S.A. 21-5408(a)(3), (b). On appeal, Patton asserts that the district court lacked a factual basis to support two elements of aggravated kidnapping—that Patton "took or confined" Preston and that Patton intended to "inflict bodily injury or to terrorize" him.

At Patton's plea hearing, the prosecutor read the amended complaint that included a description of the second-degree-murder and aggravated-kidnapping charges. For aggravated kidnapping, the complaint alleged that Patton "grab[bed] or move[d] Preston . . . from the tailgate of a truck, and in that process, there was bodily injury, which inflicted and ultimately led to [Preston's] death." The parties also reminded the judge that he had presided over Patton's preliminary hearing (where Preston's friend had testified that a fist fight between Patton and Preston started when Preston was sitting on the tailgate, then moved away from the truck, and ended with gunshots being fired). The court also confirmed separately with Patton and Patton's attorney that the State could present evidence to prove that charge, and each man answered in the affirmative.

From this proffer, we have no difficulty finding that the court was presented with facts showing that Patton intended to inflict bodily injury or terrorize Preston. The evidence at the preliminary hearing showed that Patton engaged in a physical altercation with his son that ultimately ended in Patton shooting Preston multiple times. While the

9

evidence that Patton moved or restrained Preston was more tenuous, the amended complaint—read into the record—stated that Patton had engaged in this behavior, and both Patton and his attorney stated the State could provide evidence to that effect. Thus, we agree with the district court that there was a sufficient factual basis provided at the plea hearing to accept Patton's plea.

1.2.    *The* Edgar *factors*

Patton also argues that the district court erred when it found his other arguments regarding his attorney's representation did not warrant withdrawing Patton's plea. Patton argues that he was not represented by competent counsel because his attorney "did not do enough" to ensure that Patton was competent to enter his pleas and had access to mental health resources. He points out that the attorney left blank the portion of the plea agreement that was designed to alert the district court to any mental health issues, even though the attorney was aware that Patton was receiving treatment after Preston's death. Patton also asserts that his attorney took advantage of his "fragile mental state to move" the case toward a plea.

When a defendant moves to withdraw a plea after sentencing and challenges their attorney's representation leading up to that plea, courts apply the test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to determine whether the attorney's representation was constitutionally defective. *State v. Bilbrey*, 317 Kan. 57, 64, 523 P.3d 1078 (2023). Under this test, the movant must establish that their attorney's performance fell below the objective standard of reasonableness and that there is a reasonable probability that but for their attorney's errors, the result of the proceeding would have been different. *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985).

After considering all the evidence at the hearing on Patton's plea-withdrawal motion, the district court found that Patton had not shown that Battitori's handling of Patton's mental health concerns was deficient. As the court observed, Patton's and Battitori's accounts of the mental health issues were vastly different. Battitori testified that Patton never told him that he was suicidal or that he was taking Zoloft, but Patton painted a different picture. In contrasting these two versions of the events, the court found that Patton's testimony lacked credibility, was self-serving, and ignored the benefit he received from the plea. The court also noted that a doctor had evaluated Patton leading up to the self-defense-immunity proceedings and had found Patton was logical, coherent, and could actively participate in his case.

Patton argues in passing that he was not represented by competent counsel because his attorney failed to ensure that the district court applied the correct legal standard to his self-defense immunity motion. But Patton never made this argument in his plea-withdrawal motion—his argument before the district court was that Battitori never adequately explored a self-defense argument. Thus, Patton has not preserved this argument for appellate review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (arguments not raised before the district court cannot be raised for the first time on appeal). And as we explain in this opinion, Patton waived his trial defenses—including his arguments regarding self-defense and any immunity based on self-defense—when he entered his plea. He may not use his plea-withdrawal motion to avoid the consequences of his decision to enter into a plea or revive an argument over which this court no longer has jurisdiction.

We are aware—as was the district court at the time the plea was accepted—that Patton's plea was reached through mediation, resulting in a shorter sentence than Patton would have received had he been convicted of the original charge of premeditated first-degree murder. Although Patton may now second-guess that agreement, we cannot say that the district court abused its discretion when it found that Patton's plea was made

knowingly and voluntarily. We affirm the district court's denial of Patton's postsentence motion to withdraw his plea.

### 2. *The district court's self-defense immunity ruling*

Patton next argues that the district court applied an incorrect legal standard when it denied his earlier motion for self-defense immunity. While this appeal was pending, our Kansas Supreme Court decided *State v. Jones*, 318 Kan. 600, 601, 545 P.3d 612 (2024), which held that appellate courts do not have jurisdiction to hear self-defense-immunity challenges after the court has accepted a plea. See K.S.A. 22-3602(a). We are bound by this precedent. Thus, because Patton pleaded no contest to the amended charges in this case and remains bound by that plea, we do not have appellate jurisdiction to review the district court's self-defense immunity ruling.

### 3. *The restitution order*

In his final argument on appeal, Patton challenges the district court's order that he pay $16,916.36 in restitution as part of his sentence. He argues that the court did not have jurisdiction to include this restitution amount in the sentencing journal entry because it had not been definitively set at the sentencing hearing. This discussion requires a bit more background.

At Patton's original sentencing hearing, the State requested that Patton be ordered to pay $16,916.36 in restitution for "funeral services, the headstone and fliers of Preston." The court asked Patton if he objected to the requested restitution, and Patton's attorney asked if he could take a few days to decide whether to object or request a restitution hearing. The court stated that it could not finish the sentencing without the restitution question resolved, but it indicated that it would "leave [the question] open until the journal entry is settled." The court stated that if Patton decided not to challenge the

amount of the State's requested restitution, the parties could "just include that [meaning, the requested $16,916.36] in the journal entry."

Following that sentencing hearing, Patton filed a written objection to the restitution amount and requested a hearing. The parties apparently engaged in some discussion, and Patton withdrew his objection in June 2017. The sentencing journal entry ordered Patton to pay $16,916.36 in restitution.

Patton now argues that the district court did not have jurisdiction to include restitution in the journal entry since the amount of restitution was not definitively stated at the sentencing hearing. We do not find this argument persuasive.

As a starting point, we note—and Patton acknowledges—that he never challenged his restitution before the district court. And Patton did not appeal his sentence after the journal entry was filed, though Kansas law permitted him to do so. See K.S.A. 22-3602(a). He argues, however, that we should consider this issue now because the district court's jurisdiction to enter the restitution order affects the legality of his sentence—an argument that can be considered at any time. See K.S.A. 22-3504(a), (c)(1). We agree and proceed to Patton's jurisdiction claim.

Kansas courts have long recognized that a "criminal sentence is effective upon pronouncement from the bench; it does not derive its effectiveness from the journal entry." *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 3, 160 P.3d 471 (2007). "Because restitution constitutes a part of a criminal defendant's sentence, its amount can be set only by a district judge in open court with the defendant present." *State v. Hall*, 298 Kan. 978, Syl. ¶ 1, 319 P.3d 506 (2014). When the sentencing journal entry contains something that is different from the sentence pronounced from the bench at the sentencing hearing, the journal entry "must be corrected to reflect the actual sentence imposed." *Abasolo*, 284 Kan. 299, Syl. ¶ 3.

As a corollary to this principle, our Kansas Supreme Court has found that a district court loses jurisdiction to modify a sentence after it has been ordered from the bench, except to correct clerical or mathematical errors. *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019). Thus, a court cannot later modify the restitution ordered at the sentencing hearing if that amount differs from what is included in the journal entry; the court's order at the sentencing hearing remains binding. *State v. Charles*, 298 Kan. 993, 1003, 318 P.3d 997 (2014). When more information is needed before restitution can be determined, a court may retain jurisdiction over restitution only if it bifurcates or continues a sentencing hearing through "'an explicit and specific order of continuance for the purpose of determining the amount of restitution.'" *Johnson*, 309 Kan. at 996.

Patton argues that his situation is analogous to *Charles*, where the Kansas Supreme Court found that the district court lacked jurisdiction to order restitution after the sentencing hearing had concluded. In that case, the district court stated during the sentencing hearing that it would order restitution "'as contained within the presentence report.'" 298 Kan. at 1002. Apparently, the presentence report did not list a restitution amount for one of the victims. A restitution order filed three weeks later ordered Charles to pay $1,192.69 to that victim, and Charles appealed. The Kansas Supreme Court vacated that portion of the restitution award since the amount of restitution could not be modified after the amount was pronounced from the bench. 298 Kan. at 1003. The *Charles* court emphasized that a district court should "expressly enter an order of continuance and conduct a second hearing in open court with the defendant present" if it needs more time to resolve a restitution issue. 298 Kan. at 1002.

Patton's situation differs from that discussed in *Charles*. Here, the amount of the State's requested restitution was clear—$16,916.36. The district court stated unequivocally that it would order restitution in that amount unless Patton filed an objection. And then, at Patton's request, it allowed Patton additional time to determine

14

whether he objected to the State's requested amount. Patton ultimately decided not to object to the restitution amount, and the sentencing journal entry included $16,916.36 in restitution, just as the parties had discussed at the sentencing hearing.

Thus, this is not a situation like *Charles* where the amount of restitution in the sentencing journal entry differed from the amount discussed at the sentencing hearing. See 298 Kan. at 1003. Nor was the amount of restitution unclear at the time of the sentencing hearing. See *Johnson*, 309 Kan. at 996. Instead, the district court informed Patton at sentencing that it would order him to pay $16,916.36 in restitution unless he objected, and—consistent with these statements—the sentencing journal entry included that amount of restitution. In other words, the sentencing journal entry contained the exact amount the district court had indicated at the sentencing hearing.

We note that Patton has never argued that the district court should have held an additional sentencing hearing on the amount of restitution in his case. See *Hall*, 298 Kan. at 987. This silence is understandable, as Patton himself requested that the court allow him additional time to determine whether to object to the restitution amount and then ultimately decided not to file any objections. Patton was present at the sentencing hearing when the district court unequivocally stated that if Patton did not object to the State's request, it would order $16,916.36 in restitution.

The district court did not exceed its jurisdiction when its journal entry indicated that Patton must pay $16,916.36 in restitution, as the court had previously stated at the sentencing hearing.

Affirmed.